Thank you, your honors. May it please the court. My name is Kira Schlesinger. I have the honor of representing Mr. Harry Houshang Haruni and AV Inn Associates 1, LLC. Mr. Haruni is in the courtroom this morning. Very well. And with your permission, your honors, I'll try to police myself and reserve five minutes for rebuttal. Very well. Just watch the call, counsel. Thank you, your honor. Your honor, in a nutshell, this case is about the tactics used by Best Western, which really is a franchise, and we'll get to that, under all the various elements that make up a franchise. But it's about the tactics that Best Western used to Then, when it became for their financial good, they manipulated the system, used very subjective assessments, inspections, they like to call them assessments, and then kicked the hotel out using a very cursory, foregone conclusion, termination hearing. Counsel, we also go ahead. Thank you. Are you saying that there was some type of misrepresentation director implied in the franchise agreement that was presented to your client by Best Western? I am, your honor. As a matter of fact, there's several, not the least of which the membership bylaws themselves contain what's called a member's bill of rights. Now, that bill of rights sets out very specifically the rights that the hotel member should reasonably believe they're entitled to. Excuse me. The bill of rights include things like the member is entitled to objective standards for review. It includes things like they're entitled to a hearing. In addition to the member's bill of rights, which, unfortunately, the district court in this case completely overlooked or ignored, I'm not sure, Mr. Haruni I'm sorry. I call him Harry, if that's all right with your honors. Harry also was told specifically by Terry Winogar, who is a director for Best Western, that certain services would be available to him. Now, what happened in this case is because Mr. Haruni, Harry, had originally two partners that he was going to go into this hotel business with. They backed out. Now, Harry had a very specific conversation, and his manager, Kevin Refua, was there. Harry had a very specific conversation with Ms. Winogar and said, look it, I don't know, I'm not sure how to do this. And Ms. Winogar reassured him that there would be revenue managers, there would be design people, there would be somebody there. Are there revenue managers and design people? There were not. And, in fact, the testimony says there were – let me rephrase, Your Honor, if I may. There were not revenue managers. There was a design function, which Best Western then additionally charged for, and then kept changing the rules. There was – Counsel, we have two summary judgments here, in effect. There's the summary judgment with respect to the improper termination of the franchise, which is one order, and then the breach of contract counterclaims made by your client. Now, the issue, as I see it, before this Court, is whether there are genuine issues of material fact that would have precluded the summary judgment in either case. So I would appreciate it if you would zero in on – we're talking about the termination suit or the counterclaims, and then help us to identify whether there are indeed any questions of fact that remain. Certainly, Your Honor. To directly answer your question, there were two claims made, one by Mr. Haruni, and that should have been also on behalf of AVN. The Court was asked to amend to put in the proper party. There's a historical basis of that I'd like to get back to. But in any event, the two – then there was the breach of contract claim by Best Western, and there were the counterclaims by Mr. Haruni. The counterclaim by Mr. Haruni alleged breach of contract and bad faith. There was actually also a fraud cause of action in his complaint or counterclaim that was not raised. Fraud cause of action, Your Honor? Fraud? But notwithstanding, the Court in this case, I believe it was docket 93, merged these two together in one ruling. The – both motions for summary judgment referred back and forth and incorporated by reference. The counterclaim was completely dependent on winning the claim, right? In other words, if there – unless the hotel lost on its claim for breach of contract, as a functional matter, Mr. Haruni wouldn't have a counterclaim because he would have – he himself would have breached the contract, no? Well, I appreciate that, Your Honor, and apparently that may be – that's one – certainly one way to consider it. It's not entirely accurate. And there's a case on point, which is Best Western v. Patel. Now, interestingly, that's one of the only cases that His Honor, Judge Campbell, did not sit on. In fact, he recused himself. But the way that case actually ended up going to trial was that the jury found four Best Western on the breach of contract, but simultaneously in favor of the hotel on the bad faith. The Court then looked at whether or not these were inconsistent rulings and determined that it was not. But that claim, as I understand it, is a contract-based claim itself, right? It has to be a violation of the implied covenant of good faith and fair dealing. It arises out of contract, Your Honor, but it actually is a tort claim. It is – it's implied in every contract, and it's – you've probably seen this a million times with insurance cases. I've never understood it to be a tort claim. Pardon me? I have never understood it to be a tort claim. The covenant of good faith and fair dealing can arise in the nature of bad faith and fair dealing in things like Rawlings v. Apodaca is a case that I believe was cited in the record below. It is where the conduct is pretty much an intentional conduct to deprive the other party of the value of their contract. That certainly happened in this case, because to go back to my little preliminary, what they do is they induce the members to come into the hotel franchise. They then use these subjective, very admittedly subjective reviews, and Your Honor, to address your question specifically, where the evidence was in this. The subjective assessments, as they call them, led to things that were marked down that had never been marked down before. And as you may understand, they have an inspector come out. Well, we've had the same inspector coming out for quite some time, Mitch Van Warmer. They then found out that Mr. Haruni wanted to sell or downsize his hotel. He had 6 acres of land, which, of course, took an enormous amount of work. And Mr. Haruni has Parkinson's disease. So he wanted to downsize, and they did not allow him to do that. Counsel, did I hear you say a little while ago that it was the jury found against bad faith? Did you say that? It's in a different case, but it's a very similar case. It is the case of Best Western v. Patel, and I'm happy to provide you a cite. Okay, but it is not this case. No, Your Honor. What I'm saying by that is that we have well, certainly you can say, well, you had to win on your counterclaim in order to defeat the case entire. Oh, I see. That's not entirely accurate. It sounds superficially like it can be inconsistent verdicts, but it is not. Counsel, let me try something a little differently. I've read all the briefs and reviewed the arguments, and I have some tentative conclusions, and I wanted you to help me figure out whether I'm off base or not. My tentative conclusion is that Arizona law applies because there's no showing of conflict. Number two, that the hearing, which was protected under ARS 10362 3621, was fair and, therefore, there's no violation, that there was no evidence of bad faith offered in evidence in this case, that there was an insufficient showing with respect to a fiduciary duty, that there was no indication that there was an entitlement to a conditional extension that was simply permissive, and that the forfeiture argument was waived and that the reasonable expert argument was raised. Now, those are all tentative conclusions, and I'd like to hear you tell me that I'm wrong with respect to any of those when the Judge Jones entered summary judgment in favor of Best Western on its termination claim. Certainly, Your Honor. And if I – if you'll forgive me, if you can read your first one again, I'd like to take them in order. Well, the – that – which law applies, Arizona or California? You suggested California, they suggest Arizona. And that's really all that they did was suggest Arizona law, Your Honor. The choice of law issue is one that is determined even under Arizona law. You look at it, and the restatement controls their – the restatement looks at the place of contracting, the place of negotiation of the contract, the place of performance, the domicile resident. They look at a series of factors. In this case, the hotel was a Lancaster, California case. Mr. Haruni is a California resident. The contract was negotiated basically from California. Now, you can say that Arizona law applies when it does not offend another State's public policy, but in this case, it does. That's my – that's my understanding of the question that Judge O'Scallion was posing. What's the conflict? The conflict here is that under Arizona law, they do not need to give you notice and good cause for termination. And it's very important to realize that that notice, that opportunity to cure, not only is that in California law. But didn't he have that? Pardon me? Didn't he have it under the contract anyway? No. He should have, but he didn't, because the way that that's what he should have, then there's no conflict in the law. Well, except for the fact that they didn't give him that opportunity, Your Honor. So it's one thing to say that, well, we wrote it into our contract and now we're going to disregard the contract. That's where we get back to the bad faith problem, because the way that we read the contract, they certainly should have given a conditional membership. But the way His Honor, Judge Campbell, interpreted it at Ohno, they don't need to worry about that. But wait a minute. He had an opportunity to cure, because the way the agreement was written, he had he couldn't be terminated until he had more than one failing inspection, right? So he had a failing inspection and then he had an opportunity to cure it. Your Honor, the average of the inspections was 794 points. We posit that it is the use of their subjective criteria, which is strictly forbidden in the rules, their own bylaws. It says, I believe it's at Rule No. 10 of the Member Bill of Rights, that they needed to use objective standards. The record was replete with showing that they did not. What's an example of that? An example of that would be attractive landscaping. The landscaping needs to be attractive. Well, the design personnel that Harry had already paid for came out and they approved all of Harry's design plans. But they then came out in the middle of January to the high desert, Lancaster, and said, wow, there's no bark here. Your vegetation's not attractive. So they wrote him down for it. Now, it was middle of January. The roses died. We're sorry. They'll be replanted as soon as possible. But there were some other very specific objective findings that there were paint peeling. You can tell if paint is peeling. You can tell if there's a hair in the bed. You can tell if there's certain other issues, if there were rust on certain appliances. Those aren't subjective, are they? To a large degree, they were, Your Honor, because, for example, when I'd oppose Lloyd Nygaard, their PMK, the person most knowledgeable, he couldn't tell what the picture was depicting. He didn't know. So you can say you can take a picture of anything. I'm sure you've looked at mold cases and things of that nature. You can take a picture of anything, get it up close enough, do it right, and then say, aha, that's a fault. When there's no objective criteria for how this is done, I can make any house, I promise you, your house, as beautiful as it may be, I can make it look like there's problems. Peeling paint? Well, there had just been a soccer team at the hotel that weekend before, and they didn't really get the adequate notice that they normally would have when this came out. They were supposed to be entitled to getting a re-review, but apparently Best Western very much discourages that, and in fact neglected to tell them they had to call within 48 hours of that. So to say that there were objective things, when you look at what the point score was versus what would have actually been objective, it doesn't measure up. There was enough subjective things in there that caused the point score to go down. And they did this. The two, where you say the opportunity to cure, you have to understand that once Best Western knew that Harry was looking to downsize or sell that hotel, they brought in two inspectors in relative quick succession with the intent of bringing it down. And we put the evidence in the record to show that, specifically through the depositions. Can we make sure we get back to Judge O'Scanlan's questions, because his questions are what I'm looking to hear your responses to. I want to make sure we don't run out of time. Judge O'Scanlan, I'm sorry. Can I ask you to repeat after where another one was? Well, the fair the hearing. Did he get a fair hearing under the statute or not? No, he did not. In fact, the hearing And what is your contention? The hearing was not fair. Again, it was a foregone conclusion, which was admitted through the deposition testimony. In fact, Best Western tried to say, oh, we this wasn't really arbitrary, but they went in to do a correction of the deposition testimony too late. What really happened was Mr. Haruni was ushered into the room by a security guard. Somebody was standing over him, the security guard, the whole time. They asked him 90 percent of the questions were about how much is your hotel worth when you sell it. And from there, as soon as they heard that he had Parkinson's disease, they terminated the hearing. They never listened to what he had to say, and they basically it was a foregone conclusion. Nobody knows what the director said. They don't even know how many directors were supposed to be there. It was not done according to any kind of procedure. And under ARS 103621, you have to have a fair hearing or it's not the fair procedure. It should not be enough, and this is the only case construing this statute. It should not be enough to say that we went through the motions, we sent a notice, we ushered you into a room, we said that's it, sorry, goodbye, you're out of here. This case is the only one construes it, and Judge Campbell said specifically it doesn't need to be fair. In other words, he recognized that. Kagan.           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. This is the first time that it was allowed to put on.   Kagan.       Kagan. Kagan. Kagan. Justice Sotomayor, did he request the pictures to be put on that he wasn't allowed to put on? At the hearing? He would have liked to have cross-examined them, yes, Your Honor. He would have liked to have asked about the pictures specifically to address the exact kinds of thing that Judge Inglen is referring to. He wasn't given that opportunity. So, did he ask for the presence of the inspector? And was the inspector there? First of all, he didn't. There was no opportunity to do that. They never, you know, he never was informed, here's how it's going to go. They don't do it. They don't question the witnesses. The evidence shows that they don't question where the pictures came from. They don't verify that these pictures are accurate or even, for that matter, from the same hotel. Now, they did it after the fact, but that's not a fair hearing. It didn't give Mr. Hironi the opportunity to defend his hotel, and that was his whole life. Judge O'Scanlan, was there another question, sir, that I can address quickly? The bad faith. You alleged bad faith, but what's the evidence that you're relying on with respect to bad faith? Again, the bad faith serves the subjective assessments that they did, and the depositions are replete with that. The bad faith is further. How does that get above the threshold of bad faith? You either disagree with the assessments, obviously, but where does the bad faith come in? Certainly, it's not a manner of simply disagreeing with them. It's a manner of violating the member's bills of rights. But it's also a matter of deciding to terminate the hotel when they find out he was downsizing. You see, there's a financial gain there. If they have the hotel — Well, I mean, they found out he was downsizing and they terminated the hotel. But the question is, what is your summary — evidence on summary judgment that those two things were connected? Now, sometimes we allow the inference just from the timing. Is that what you're arguing? There is that inference, Your Honor, but there is also direct testimony in there that they had implemented a new plan to get rid of older hotels. There's also a large discussion in the record talking about that when the hotel is sold, if it's under a probationary status, Best Western gets five times less money than if they get the hotel down to a probationary status and then force the sale of the hotel. Best Western profits from that. That's a good indicator of bad faith in and of itself. In fact, they didn't profit from it because it didn't become a Best Western hotel. In this case, no, Your Honor, but it is a pattern in practice. And there's numerous cases that I could cite to you, time allowing. Counsel, you may want to reserve. You're down to about a minute. You may want to reserve for about a minute if you wish. Thank you, Your Honor. Okay. Thank you, counsel. We'll hear from the other side. Mr. Scanlon, the appellant is asking a question. I don't know. No, I'm sorry, counsel. Counsel, would you ask your client, please, to return to his seat? Thank you. Unless he wishes to consult you. He certainly, if he wishes to consult you, he certainly can sit at counsel's table, but he will not be heard here. No, no, I understand that. I believe he wanted to talk to me. Well, that's fine. He may do so. Before we get started, if he wishes to, he can join you at counsel table, yes. All right, counsel, you may proceed. Thank you. My name is David Garbarino. I'm here with my partner, Art Pedersen, and Jay Pritchard, corporate counsel of Best Western. Best Western is a nonprofit corporation consisting of members who own and operate their own independent hotels. Best Western is a cooperative of those members. The members elect the seven-member board of directors, which consists of actual Best Western members who own and operate their own independent hotels. Members vote on changes to the bylaws and the rules and regulations. I'm sorry. Why does any of this matter for this case? Just giving you a background as to the context of Mr. Haruni's relationship with Best Western. That relationship was formed by the Best Western membership agreement, which Mr. Haruni entered into, and which is the contract that's issued in this litigation. Well, counsel, you, your side prevailed in the summary judgment, and the question, of course, is if there are genuine issues of material fact. And at least two areas concern me. One is with respect to whether the hearing was fair, and then, secondly, with respect to the allegations of bad faith and why Judge Jones did not regard these allegations as raising a question of fact, among other issues. But let's get to the analysis directly, please. Certainly, Your Honor. In context of the hearing itself, if the Court looks to the moving papers, there is no evidence that Mr. Haruni, one, asked for additional time during the hearing, that he had wanted to cross-examine any witnesses, what he would have presented during that time frame. There simply is no evidence of bad faith at that hearing. Judge Campbell, who authored the decision in this case and also the decision in Best Western v. Sharda, said that mere disagreement alone with the decision of the Best Western Board does not constitute bad faith. If there were evidence in the record, for example, that the Board had terminated Mr. Haruni's membership because of his ethnicity or his religion or some other bad reason, I could understand where there would be an issue of fact. I could understand his basic argument. And thinking of this in context, say, of a Title VII case, the issue is whether it would be enough to demonstrate pretext. He basically says that someone whose name I'm not remembering was Mitch. Mitch was the one, I think, who was doing the inspections for the most part, well, someone. And he had always essentially been somewhat forgiving as to certain things when there were explanations. And then this story, as I understand it, and then Mr. Haruni let it be known that he had put the hotel for sale and or that he wanted to downsize it. And then the same person came back, did a much more rigid inspection. And then different people came and did an even much more rigid inspection. And that there is some way to infer from the current record that this was all a pretext for wanting to get rid of him. And moreover, then when he showed up to the hearing and it turned out he was ill, then they – although there's no specific connection, but he does say, I told him that I had Parkinson's disease, and at that point they didn't want to hear from me anymore. So that essentially is a story. And the question is, why would the record not be sufficient to allow that story to get to a jury? Because I think that the issue here is governed by the Best Question contract itself. If you go back and look at the testimony regarding the inspection process, the head housekeeper said that Mitch, and this is who we're referring to, Mitch, always deducted points for things that he saw that were wrong. The general manager of the hotel also testified at her deposition to the same thing, that Mitch always deducted points if he saw something wrong. So there's no basis to contest what Mitch did or Mitch's inspection. At the point of time when the first failing inspection was received, as the court has recognized, there is basically an opportunity to kind of cure what might be ailing the hotel. Mr. Haruni should have known that there are certain things that we need to take care of and be on a lookout for, specifically to make sure that we don't receive another inspection that is below the 800-point level. Now, when Ms. Bree came out and did the inspection, yes, she was a different inspector, but there is no evidence that Ms. Bree knew that the hotel was being sold. So there is no, you know, ability to make the inference that she inspected the hotel in a more difficult or critical manner. He had the opportunity in writing or at the hearing to go through the deductions and say, this one doesn't make sense, that one doesn't make sense, et cetera. He had the opportunity to do whatever he wanted to do at the hearing, Your Honor, to present what evidence he wanted to present. There is no evidence in the record that demonstrates what Mr. Haruni did want to present at the hearing. That's kind of an evidence gap that exists in favor of Best Western is what did Mr. Haruni want to present at the hearing, what didn't he get the opportunity to present at the hearing, and it's simply not in the record on Best Western's motion for summary judgment. Kennedy. Kennedy. Kennedy. Was the hearing recorded or transcribed? Your Honor, based on my personal knowledge, I do not know, and it's not an issue that I think that was either certified in declaration for summary judgment purposes. But if there was an evidence gap. So when you say evidence gap, you are referring to the failure to submit depositions or some collateral evidence as to what happened or didn't happen at the hearing? Is that what you're saying? What I say is an evidence gap is Mr. Haruni is claiming that Best Western acted in bad faith, but there is no evidence of that bad faith. What happened at the hearing that wasn't in the bad faith? But what about the depositions that Ms. Lessinger referred to? In particular, the deposition in Haruni itself? Well, in her oral argument. You heard her oral argument here. I believe that she argued regarding Mr. Haruni's testimony regarding the hearing. That deposition transcript testimony was specifically cited to the Court by Best Western in support of its motion for summary judgment to demonstrate that there was nothing that occurred at the meeting that was in bad faith. She refers to the court. But it wasn't cited to the court. Is it in evidence or not? Yes, it's in evidence, Your Honor. You say it was cited. I believe it was actually cited in Best Western's actual moving paper itself. And Best Western supported its moving paper with a statement of facts where that statement would also be contained, supported by, again, the deposition transcript as an exhibit thereto. And then somewhat separately from this set of claims about how the contract wasn't forced, there's also what appears to be something like a fraud in the inducement claim, which I guess is part of the counterclaim. And I understand that there's an issue there as to – I mean, is there a fraud in the inducement claim in the counterclaim? No. There is no fraudulent inducement in the counterclaim. The counterclaim is limited to breach of contract. Breach of the implied contract and breach of the covenant of good faith and fair dealing and seeks monetary damages. And there's no fraud claim? There is no fraud. I'm sure Ms. Schlesinger will correct me if I'm wrong, but I do not believe there is a – If there was, and I wasn't – I wasn't – I don't think I was aware of it. If there were one, I presume that could be on behalf of Mr. Haruni, couldn't it? The fraud claim itself, but he'd still have to demonstrate some sort of damages to recover those damages. And in this case, as we've demonstrated, the damages, the evidence was proffered for related to AVN Operations, which was, number one, not even a party to the membership agreement with Best Western. Mr. testified that – Mr. Haruni testified that AVN Operations owned the hotel operations and the businesses that sat on the hotel. And AVN Operations has never asserted a counterclaim in this litigation. Does that answer your question, Your Honor? Did it try to amend in and the district court didn't allow it? I'm sorry, could you repeat that? Was there an attempt to amend it in and the district court didn't allow it? There was never an attempt, I do not believe, to amend or assert a counterclaim by AVN Operations. Procedurally, what happened was that Mr. Haruni, acting on his own behalf and on behalf of AVN Associates, which is the other entity which owns the property under the hotel and is a party to the membership agreement, Mr. Haruni sought leave to amend – or, excuse me, leave to assert a counterclaim on behalf of those – of AVN Associates. The district court said, Mr. Haruni, you can assert your counterclaim because you are a natural person and you can represent yourself in this court, but I'm not going to grant you leave to assert the counterclaim on behalf of AVN Associates, which is a property under the hotel and is a party to the membership agreement. Shortly thereafter, after the judge's ruling, Mr. Haruni obtained counsel. I want to say the date is approximately June 25th. It was probably ten days after the Court's order. At no point along the line, even after Best Western asked the Court for clarification as to what counterclaim was actually pending against Best Western, was there any effort made or any motion made for leave to assert another counterclaim. Therefore, the district court concluded the only counterclaim pending is that of Mr. Haruni. But when counsel was retained, couldn't counsel have represented those additional entities? Absolutely, Your Honor. In fact, counsel did. There was never any filing with respect to that or notice of representation or? There was a notice of representation filed, Your Honor. But then again, there was never any effort to reinstate or reassert or seek leave to assert the counterclaim on behalf of AVN Associates. What would that have required? Either an amended complaint of some sort, amended counterclaim, or what? What would you have looked for? Something. Like what? Anything. I think the point is that when Judge Campbell said, Mr. Haruni, you can bring your counterclaim, but you can't bring it on behalf of AVN, and then entered the counterclaim on behalf of Mr. Haruni, there simply is no counterclaim in the record for the entity itself. Something needed to be done once counsel came on board to say, hey, I represent the entity, and we need to make a counterclaim. The notice of appearance did not represent, did not indicate that counsel was representing the other entities? Absolutely, it did. It did not or did? In terms of representing Mr. Haruni and AVN Associates, yes, it did. Recall, AVN Operations was never a party to the litigation. And so the representation was based on those two defendants. But at the time that he stepped in, again, there was no counterclaim pending because the Court had denied motion for leave. Something needed to be done to reassert that counterclaim, or at least ask the Court to leave to reassert that counterclaim. And AV the AV entity that was in the counterclaim, although disallowed, was the one that just owned the land, is that it? That's correct, Your Honor. Pursuant or subject, as Mr. Haruni testified, AVN Associates, the LLC, was the entity that owned the real property under the hotel. And AVN Operations, which is not a party to the membership agreement and not a party to the litigation, owned the hotel operations. Now, the counterclaim does say, in it, Plaintiff induced me to purchase the franchise through a falsehood and failed to perform all of the promised services. Now, just as a matter of allocation, that would appear to a State of fraud in the inducement claim, would it not? Your Honor, it seems like to me, isn't there a requirement of pleading fraud with particularity in terms of either recovering damages or an inducement? Well, he went on to say that they didn't have a functioning online reservation system, and they didn't tell him various things that would have to happen. And I guess it doesn't say very much about what the inducement – no, Ms. Winokur reassured me that they provided various support in managing the hotel and generating sales. So, you know, there's more than that. Okay. I guess we would look back to the actual motion for summary judgment as to whether those facts were in the record and would defeat Best Western's contract claim itself or would be sufficient to support Mr. Haruni's contract claim in this case. Mr. Haruni didn't move for summary judgment. And, again, Mr. Haruni's motion is a separate issue. We're here today to talk about Best Western's motion. But in the – Well, we're also here to talk about the counterclaims. Correct. Because Best Western obviously prevailed in its motion for summary judgment on that counterclaim. But there was never any evidence offered in terms of demonstrating a complete fraud upon Mr. Haruni in the Respondent's moving papers. Well, he said essentially, for example, they said they were going to help me with corporate – getting corporate clients, and then they didn't do it, and then they said it all fell through the cracks, and as a result – and then they let me do it on my own. And as a result, for the first year I had 10 to 20 percent occupancy. And then when I finally went and got the – was on the corporate clients, then I had much better occupancy. So there's stuff there, isn't there? But I think that the Court needs to look at what provision of the actual governing documents that were allegedly breached and what facts demonstrate that breach. I'm asking about whether there is, I'd say, lurking here, because it's not all that clear, a fraud claim. In – granted that in some instances Mr. Haruni alleged that there was a misrepresentation. But the question is, and the question on Mr. Haruni's contract claim and Bess Western's contract claim, was there a material breach by Bess Western of any of the material provision or any of the provisions of the governing documents themselves. And what Judge Campbell held was there was no evidence of a material breach. There was no evidence of actual damages. If we talk about the issues that you're talking about now, Your Honor, where is the monetary amounts of those damages? There's this entity problem about who incurred the damages. But he certainly says, they promised me they were going to help me with the reservation system, and the reservation system didn't work, and they promised me they were going to help me with the corporate clients, and they completely didn't do that for some period of time and interfered with me doing it. And so he does have some specifics there of things that were promised and represented and then didn't happen. And my understanding is that he's alleging that both as a contract claim, but also as a fraud claim. And there is a species of fraud claim that is, you know, you made a promise, but at the time you promised it, you didn't mean it. You never meant to do it. Well, I understand that, Your Honor, but I guess, number one, was that that truly pled? And with respect to the reservation system, the issue was addressed in Best Western's motion for summary judgment and its supporting statement of facts to demonstrate that there was no breach by Best Western with respect to that system, and the same with respect to the RFP process. That's the request for a proposal. What does RFP mean? Request for proposal. I mean, for the corporation, corporate business, is that what you're saying? Yeah, correctly. You submit something to a corporation saying we want to have Best Western or this Best Western be on our preferred list of hotels. There was no evidence that Best Western did anything to breach, you know, any term that was, you know, allegedly promised to him. And on top of that, there was no evidence of damages that resulted from the deal. Counsel, with respect to the damages issue, I'm a little confused about the role that Mr. Lavey played and Mr. Evans. What helped me figure out what's in the record with respect to what Lavey did and where we stand with Mr. Evans. Evans, I gather, was the accountant for the company, is that correct, for the hotel, is that correct? That's the best of my understanding of the record, Your Honor. Lavey was retained, Mr. Lavey was retained as an expert witness. Prior to the deadline to disclose expert witnesses, Best Western had, through written discovery, attempted to obtain, you know, some sort of measurement, calculation of what the damages were actually claimed. We had two telephonic conferences with the trial court to, you know, try to resolve this issue because we were getting nothing through written discovery. Counsel for Mr. Haruni said, we are going to present an expert who's going to testify as to the damages, we will make his disclosures to you on November 6th. We received the Lavey report, which was actually filed in the record, on November 6th. But Mr. Lavey's report only addresses losses that were incurred by AVN operations. And I've said that's not a party to the agreement. Which was not a party. I understand that. Okay. And Mr. Scott was disclosed on the very last day of discovery. And it was disclosed that he was going to testify regarding the amounts of money that Mr. Haruni had invested in the property. Well, the amounts of money that Mr. Haruni invested into the property is not a measure of damages. And the district court recognized that, that that doesn't demonstrate what was caused by Best Western's alleged improperty. What was it showing for Mr. Evans? I believe it was in the declaration that was filed, the amount of losses of the hotel during the time that Mr. Haruni owned and operated it. And during that time, he was actually a Best Western member, so it's hard to pin any of those losses specifically on Best Western. Mr. Scott, or Mr. Evans, also in his declaration included statements of how much money Mr. Haruni had invested through his entities into the hotel property itself in terms of purchasing the hotel, which was done through ADN Associates, and the improvement settlement. But your argument is that that's not enough to raise an inference of a genuine issue of fact. It's certainly not enough to demonstrate what a measure of damages is, Your Honor. And they have to demonstrate damages to prevail on a contract claim and on, you know, to prevent Best Western's claim. Very much. Is it your position that the – if we affirm the denial – the grant of summary judgment to Best Western, that's the end of the case, despite any of this, because there's the counterclaim depends on you're losing the summary judgment or not? I'm sorry. Could you repeat that one more time? I asked the same question before. Does the counterclaim depend on what Best Western losing its part – its affirmative case? Let's leave aside the problem. I think it's a timing question. Leave aside the problem of the entities and the damages and everything else. Does it just go away if you win on the other issue? I think it's a timing issue as to when the actual breach occurs. I think Judge Berzon's question is, if we find for you on the summary judgment with respect to the termination claim, does that trump the counterclaim summary judgment? I believe so. And in conclusion, I would request that this Court affirm the district court and award Best Western its attorneys' fees and costs on appeal. Thank you. Very well. Ms. Lessinger, you have not a lot of time, but – And I appreciate that, Your Honor, to get very quickly. First of all, critically, Best Western had answered the counterclaim that was brought by AVN and Associates. What Judge Campbell did was to deem their motion that we get counsel. That's the motion that Best Western brought. They brought a motion that AVN go and get counsel. They did, in the interim, Best Western had answered that counterclaim. They did. And then Best Western waited more than six months until the end of discovery to bring a, quote, motion to clarify. Now, that was prior counsel for Mr. Harini. It wasn't me. But that's where they were. When I came in, the judge then, on a motion to clarify at the end of discovery, said, oh, maybe you're right, Best Western, there's no counterclaim, even though Best Western had answered it. Well, were the corporations ever brought into the suit? Were they ever made parties? AVN was. And the important thing is that AVN didn't just own the land, but both corporations were defunct by the time we brought their own. And importantly, Your Honors, there was no motions for summary judgment on the fraud count. I deemed that to be a very factual matter. So the case should not be over, even if they say that there wasn't evidence, because there was. The problem is you didn't call it a fraud claim, or whoever wrote it didn't call it a fraud claim. Mr. Harini wrote it himself. But there is a fraud claim. And if you read it, and it's got to be read in its entirety, it's clearly in there. It's fraud in the inducement. That's what happened. It goes to the bad faith claim. The damages that Mr. Evans stated also say, in addition to the pass-through argument and the fact that both companies were defunct, so Harry should be the representative. There's no one else that can do it. Both companies were defunct. But the – Harry wrote checks to both fund the hotel. He wrote checks. And Terry Winograd, their witness, knows that he spent $2 million in the hotel. The hotel was not able to be sold for its highest and best use because of Best Western's fraud and their termination of the thing. We can bring witnesses all day long that their fraud, their misrepresentations led to his having to sell the hotel at a loss out of his personal money. He had charge card receipts, for goodness' sakes, that Best Western was aware of that said that. And the fact that they did not provide the services is critical here. That's the bad thing. All right. Thank you, Counsel. Your time has expired. I thank you, Your Honors. I appreciate it. I believe this case should go on, Your Honor. Give him a chance. Thank you very much, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: England, O'scannlain, Berzon